**John S. MARSHALL, Appellant,**

v.

**W. L. GARRISON, Warden, Maurice Sigler, Chairman, U.S. Parole Commission, Appellees.**

**No. 81–6151.**

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1981.

Decided Sept. 16, 1981.

Joseph J. Trepel, Silver Spring, Md., for appellant.

Michael A. Stover, U.S. Parole Commission, Washington, D. C. (Justin W. Williams, U. S. Atty., Thomas K. Berger, Asst. U. S. Atty., Alexandria, Va., Joseph A. Barry, U. S. Parole Commission, Washington, D. C., on brief), for appellees.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BRITT,[*] District Judge.

WINTER, Chief Judge:

Marshall, a federal prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Alleging various constitutional and procedural errors in the United States Parole Commission's evaluation of his eligibility for parole, Marshall sought to compel the Parole Commission to grant him a rehearing under directions from the district court with regard to applicable rules to be applied. The district court denied Marshall's petition without hearing because it concluded that Marshall had failed to allege a constitutional violation. We reverse and remand for plenary consideration of Marshall's petition.

## I.

In 1973 Marshall pleaded guilty in the United States District Court for the District of Columbia to charges of attempting to kill a member of Congress (Senator John C. Stennis), armed robbery, assault with intent to kill while armed, and carrying a dangerous weapon.[1] Marshall was under twenty-two years of age, and he was sentenced as a "youth offender" under the Federal Youth Corrections Act to serve fifteen years in prison. 18 U.S.C. § 5010(c). By virtue of 18 U.S.C. § 5017(d), Marshall could be released conditionally under supervision at any time.

In January 1979 Marshall appeared before the Parole Commission which set an effective parole date of November 14, 1979. On March 19, 1979, however, Marshall received notice that his parole date had been changed from effective to presumptive. On July 12, 1979, he was informed that the Commission would reconsider that date based on new evidence that Marshall had committed a second robbery on the day Senator Stennis was shot.

After a hearing on September 19, 1979, a panel of Parole Commission hearing examiners considered the evidence that Marshall had participated in a second robbery and "strongly recommended" that Marshall again receive an effective parole date of November 14, 1979. However, the National Commissioners rejected this recommendation and set a new parole date for January 28, 1983; and, when Marshall took an administrative appeal, this action was affirmed by the full Parole Commission. The Commission based its decision on three factors: Marshall's "active participation" in a second robbery on the day Senator Stennis was shot and robbed; the "severity" of the crimes to which Marshall pleaded guilty; and Marshall's commission of seven institutional infractions while he was in prison. The seven institutional infractions had been known to the Commission in January 1979 when it fixed November 14, 1979, as his parole date.

On August 1, 1980, Marshall filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia.[2] Aside from other

---

[*] Honorable W. Earl Britt, United States District Judge for the Eastern District of North Carolina, sitting by designation.

1. Because the district court denied Marshall's petition without holding a hearing to resolve factual issues, we assume Marshall's allega-

tions to be true for purposes of reviewing the merits of his claims.

2. A petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed in that court was the proper vehicle for challenging the Parole Commission's action because Marshall is confined in the Federal Correctional Institute at Peters-

claims that he has abandoned on appeal, Marshall alleged that the Parole Commission had violated the Constitution's proscription of *ex post facto* laws by evaluating him on the basis of the severity of his offenses, a factor that could not have been considered under the law as it existed at the time he committed the crimes to which he pleaded guilty, and had abused its discretion by considering his alleged participation in the second alleged robbery without any "substantial information" that proved that participation. The district court denied the petition without holding an evidentiary hearing, ruling that none of Marshall's allegations "overcomes the broad discretion which the Commission holds by statute and by case law to grant or deny parole, and none states a constitutional violation."

## II.

■ We consider first Marshall's allegation that the Parole Commission "by applying offense severity standards against your Petitioner, who was sentenced prior to their adoption, violated the United States Constitution's ban on *ex post facto* laws, Art. I, Sec. 9, Clause III, and has thereby unjustly increased the punishment of your Petitioner, a juvenile offender." To determine whether Marshall stated a valid constitutional claim, we begin by comparing the criteria for parole release decisions for youth offenders that were appropriate under the Youth Corrections Act as it existed in 1973, when Marshall committed the crimes of which he was convicted,[3] with

those that were used by the Parole Commission to extend Marshall's parole date to January 28, 1983.

The Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5024, was enacted by Congress in 1949 to provide a means of rehabilitation, rather than simply punishment, for persons under the age of twenty-two who had been convicted of a federal crime.[4] As explained by the Senate Report that accompanied the bill, "[t]he underlying theory of the bill is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation." [1950] U.S.Code Cong.Serv. 3983, 3985. In determining which of several available methods of treatment to employ for a youth offender, the Youth Corrections Division of the Board of Parole is required by 18 U.S.C. § 5014 to make a study of the offender, "including a mental and physical examination, to ascertain his personal traits, his capabilities, pertinent circumstances of his school, family life, any previous delinquency or criminal experience, and any mental or physical defects or other factor contributing to his delinquency." 18 U.S.C. § 5014. "The *severity* of the youthful offender's crime was conspicuously absent from the factors that could be assessed in determining whether to treat or release him." *Shepard v. Taylor,* 556 F.2d 648, 653 (2 Cir. 1977).

---

burg, Virginia, which is located in the Eastern District of Virginia. *See United States v. DiRusso,* 548 F.2d 372 (1 Cir. 1976).

3. The pertinent time in assessing whether a statute is an *ex post facto* law is when the prisoner committed the crime in question, and not, as Marshall alleged, when he was convicted or sentenced. As the Supreme Court explained in *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17, 24 (1981):

Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

Although Marshall's habeas petition does not state the date on which he committed the crimes to which he pleaded guilty, we infer from his allegation that he had "been incarcerated from June 22, 1973" for observation and study under the Youth Corrections Act that the crimes were committed sometime before June 22, 1973.

4. For a general discussion of the history and provisions of the Act, *see Watts v. Hadden,* 469 F.Supp. 223 (D.Colo.1979).

From the legislative history of the Act and from its enumeration of factors appropriate for consideration in selecting the method of treatment, we think that Congress originally intended that the decision whether to release a youth offender should be based on considerations of rehabilitation rather than on considerations of general deterrence and retribution. Because the severity of a youth offender's offense is relevant only to the latter considerations, it was not a proper factor to be assessed in determining whether to grant parole. As the Supreme Court stated in describing the philosophy of the original Youth Corrections Act, "[a]n important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, *not the crime for which he was convicted.*" *Dorszynski v. United States,* 418 U.S. 424, 434, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974) (emphasis added).

Our conclusion that offense severity was not a proper factor to be considered in making parole evaluations of persons sentenced under the pre-1976 version of the Youth Corrections Act is in accord with the views expressed by five other federal courts. *Shepard v. Taylor,* 556 F.2d 648, 652–53 (2 Cir. 1977); *Benites v. United States Parole Commission,* 595 F.2d 518, 520 (9 Cir. 1979); *DePeralta v. Garrison,* 575 F.2d 749, 751–52 (9 Cir. 1978); *Rifai v. United States Parole Commission,* 586 F.2d 695, 699 (9 Cir. 1978); *United States ex rel. Mayet v. Sigler,* 403 F.Supp. 1243, 1244 (M.D.Pa.1975), *aff'd without published opinion,* 556 F.2d 570 (3 Cir. 1977). Only one court of appeals has suggested otherwise. In *Fronczak v. Warden, El Reno Reformatory,* 553 F.2d 1219 (10 Cir. 1977), *affirming* 431 F.Supp. 981 (W.D.Okla.1976), the Tenth Circuit held that the Parole Commission (then called the Parole Board) had not exceeded its statutory authority in promulgating and employing parole guidelines for persons sentenced under the pre-1976 version of the Youth Corrections Act that considered the severity of the youth offenders' crimes. *See* 28 C.F.R. § 2.20 (1976). But *Fronczak* is of little authority here. The

prisoner in *Fronczak* challenged the Parole Commission's guidelines as unlawful because inconsistent with the purpose of the Youth Corrections Act; he did not invoke the *ex post facto* clause as does Marshall in the case before us.

In 1976 Congress introduced the factors of general deterrence and retribution into the parole evaluation equation for persons sentenced under the Youth Corrections Act. In the Parole Commission and Reorganization Act, Pub.L.No.94–233, § 7, 90 Stat. 219, ·232 (1976) (codified at 18 U.S.C. §§ 4201–4218), Congress amended 18 U.S.C. § 5017(a), the section of the Youth Corrections Act regarding release of youth offenders, to incorporate the parole criteria upon which adult parole decisions would be made. *See* 18 U.S.C. § 5017(a) (1981 Supp.). Those criteria are contained in 18 U.S.C. § 4206:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare; ... pursuant to guidelines promulgated by the Commission pursuant to [18 U.S.C. §] 4203(a)(1), such prisoner shall be released.

The legislative history of the Parole Act shows that through the amendment of 18 U.S.C. § 5017(a) Congress intended to apply the same parole criteria to all federal prisoners, youth offenders and adults. The Senate Report states that the "only notable change [in parole criteria] is that the standards and criteria are made the same for all federal prisoners ...," and describes the amendment to 18 U.S.C. § 5017(a) as designed "to provide for parallel release criteria for all offenders." [1976] U.S.Code Cong. & Admin.News, 335, 339–40, 350. The report shows further that Congress in-

tended that the Parole Commission in making parole release decisions would consider whether the prisoner had received "just punishment" and would "weigh the concepts of general and special deterrence, retribution and punishment . . . ." *Id.* at 358.

 Even before the 1976 amendment to 18 U.S.C. § 5017(a) required the Parole Commission to consider the severity of a youth offender's offense in evaluating him for parole, the Commission was employing guidelines based, in part, on the severity of the offender's crime in its parole release decisions for youth offenders. In 1973 the Parole Commission adopted guidelines to aid in making parole release decisions for adult and youth offenders under which the gravity of the prisoner's offense was a significant factor. *See* 38 Fed.Reg. 31942–45 (1973); 28 C.F.R. § 2.20 (1974) (current version at 28 C.F.R. § 2.20 (1980)); *see generally* Project, *Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 822–28 (1975). These guidelines became effective on November 19, 1973, *see* 38 Fed.Reg. 31942 (1973), and so were not in use when Marshall committed the crimes to which he later pleaded guilty. *See* note 3, *supra.* Even ,if the Parole Commission's adoption of these guidelines in 1973 shows that it interpreted the Youth Corrections Act prior to the time that Marshall committed his crimes as permitting consideration of the severity of a youth offender's crime in evaluating him for parole, we think that determination is not dispositive. While an agency's interpretation of a statute it is charged with administering is entitled to deference, we must reject that interpretation if we find it inconsistent with the statute and its legislative history. *See SEC v. Sloan*, 436 U.S. 103, 117–19, 98 S.Ct. 1702, 1711–12, 56 L.Ed.2d 148 (1978). Because, for the reasons stated above, we find that offense severity was not a proper factor to consider in evaluating a youth offender for parole under the pre-1976 version of the Youth Corrections Act, we are unpersuaded by the administrative interpretation of the statute.

It is clear from the Parole Commission's "Notice of Action on Appeal" that the severity of the crimes to which Marshall pleaded guilty was a major factor in its decision to postpone his parole date to 1983. The Parole Commission wrote to Marshall:

> Your offense behavior has been rated as Greatest severity because it involved the robbery and shooting of a United States Senator. You have a salient factor score of 9. You have been in custody a total of 81 months. Guidelines established by the Commission for adult cases which consider the above factor indicate a minimum of 27 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and time ranges specified in the Very High severity category.

In evaluating Marshall for parole, we thus conclude that the Commission considered a factor that it could not properly consider under the version of the Act in effect in 1973, when Marshall committed his offenses.

### III.

 We also hold that the amended version of 18 U.S.C. § 5017(a) could not validly require the Parole Commission to consider the severity of Marshall's offenses in evaluating him for parole, because, given that application, the amended Act would be an *ex post facto* law, prohibited by the Constitution.

In *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), the Supreme Court's first explication of the *ex post facto* clauses,[5]

---

5. The Constitution contains two clauses proscribing *ex post facto* laws, one that applies to the states, U.S.Const. art. I, § 10, cl. 1, and one that applies to the federal government, U.S.

Justice Chase wrote that the clauses proscribed, among other things, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Id.*, 3 U.S. at 390. In its latest case involving the *ex post facto* clause, *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Court explained that "two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23 (footnotes omitted). In *Weaver* the Court found both factors present in a Florida statute that reduced the amount of time deductible from a prisoner's sentence for "good time for good conduct" and that applied to persons convicted of crimes committed before its enactment. The statute was an *ex post facto* law when applied to a prisoner who was convicted of having committed crimes before its enactment because the statute "change[d] the legal consequences of acts completed before its effective date" and because such a prisoner was "disadvantaged by the reduced opportunity to shorten his time in prison simply through good conduct." *Id.* at 31, 33, 34, 101 S.Ct. at 965, 967, 67 L.Ed.2d at 24, 26.

Like the statute at issue in *Weaver*, 18 U.S.C. § 5017(a) (1980), if applied retrospectively, "changes the legal consequences of acts completed before its effective date" by prescribing that new criteria be considered in evaluating for parole youth offenders who committed crimes before the 1976 amendment to 18 U.S.C. § 5017(a). That provision would also disadvantage prisoners who committed crimes before its effective date, because it would lengthen the period of time those prisoners must spend in prison by making parole more difficult to obtain. Therefore, if the allegations in Marshall's petition are true, 18 U.S.C. § 5017(a) (1980),

as applied to him, is an *ex post facto* law, violative of the Constitution.

Our analysis is supported by decisions of the Second and Ninth Circuits. In *Shepard v. Taylor*, 556 F.2d 648 (2 Cir. 1977), and *DePeralta v. Garrison*, 575 F.2d 749 (9 Cir. 1978), both courts held that under the *ex post facto* clause youth offenders who committed crimes before 1976 may not be evaluated for parole on the basis of the severity of their offenses, a factor made applicable to youth offenders only in 1976. *See also Benites v. United States Parole Commission*, 595 F.2d 518, 521 (9 Cir. 1979) (dictum) (1976 amendment of 18 U.S.C. § 5017(a) not in effect when petitioner evaluated for parole but, "even if it had been . . ., it could not be applied retroactively in a Youth Corrections Act case without raising fatal *ex post facto* problems.").

In denying Marshall's petition, the district court cited *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), in support of the proposition that, "[t]he fact that the National Commissioners allegedly applied offense severity standards against the Plaintiff, who was sentenced prior to their adoption, does not violate the constitutional ban on *ex post facto* laws." *Addonizio*, however, is irrelevant to Marshall's *ex post facto* claim. In that case federal prisoners sought to attack collaterally their sentences under 28 U.S.C. § 2255 on the ground that a post-sentencing change in the rules of the Parole Commission prolonged their sentences beyond the period intended by the sentencing judge. The Supreme Court ruled that the prisoners could not make such attacks under 28 U.S.C. § 2255 because those attacks did not challenge the lawfulness of the prisoners' sentences. The Court noted that it was deciding "only [this] jurisdictional issue," and was not considering whether the Parole Commission's guidelines "may violate the Ex Post Facto Clause of the Constitution." *Id.* at 184, 99 S.Ct. at 2239. *Addonizio*,

Const. art. I, § 9, cl. 3. The latter provision, part of the article of the Constitution describing Congress' legislative power and setting the limits on that power, provides: "No . . . ex post

facto law shall be passed." *See generally* L. Tribe, *American Constitutional Law* 474–84 (1978).

then, provided no support for the district court's summary rejection of Marshall's *ex post facto* claim.

## IV.

■ The Parole Commission's "Notice of Action on Appeal" makes clear that another factor that compelled the Commission to postpone Marshall's parole date to 1983 was his participation in a second robbery on the day of the Stennis shooting:

> The Commission has considered not only your part in the robbery and shooting of Senator Stennis, but also your active participation shortly before the assault in the robbery of another elderly victim. This additional factor has persuaded the Commissioners that you fully shared your brother's callous and wanton state of mind at the time you both assaulted Senator Stennis. The Commissioners can no longer make the assumption (upon which its previous decision was based) that your case merits substantial leniency because your brother was the only participant consciously predisposed to violence.

In his habeas petition, Marshall alleged that the Commission had abused its discretion in considering his participation in this second crime because the Commission had no "substantial information" to substantiate that participation. We believe that this allegation stated a valid claim and deserved full consideration at an evidentiary hearing.

The statute, 18 U.S.C. § 4207, provides that in making parole release decisions the Parole Commission

> shall consider, if available and relevant:
>
> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>
> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
>
> (3) presentence investigation reports;
>
> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and
>
> (5) reports of physical, mental, or psychiatric examination of the offender.

> There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

*See also* 28 C.F.R. § 2.19 (1980). The statute thus requires that the Parole Commission must make parole decisions on the basis of the enumerated types of information or on "such additional relevant information concerning the prisoner . . . as may be reasonably available." The "additional relevant information" is a catch-all; and while we do not doubt that, with respect to other crimes, proof of their commission in the form of a conviction is not required, nevertheless the Parole Commission must have some reasonably reliable information before it may treat the fact as proved. Consequently, we think that Marshall stated a valid claim of abuse of the Parole Commission's discretion when he alleged that the Commission had no "substantial information" to support its conclusion that he had "participated" in a second robbery on the day of the Stennis shooting. Although it may be proper for the Parole Commission to consider counts of an indictment which have been dismissed, *see United States ex rel. Goldberg v. Warden*, 622 F.2d 60 (3 Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980); *Narvaiz v. Day*, 444 F.Supp. 36 (W.D.Okla.1977), Marshall has alleged, and we must assume as true, that the Parole Commission did not have such an indictment or any other evidence regarding the second robbery. The district court must therefore conduct an evidentiary hearing to determine what information, if any, formed the basis of the Parole Commission's finding that Marshall had participated in the second robbery. Short of some relevant, reasonably reliable evidence of the commission of another crime, the district court may not permit the Parole Commission to deny or postpone the granting of parole on the basis of a prisoner's commission of other crimes.

Accordingly, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.