**UNITED STATES of America, Plaintiff,**

v.

**Jeffrey R. MacDONALD, Defendant.**

**No. 75–26–CR–3.**

United States District Court,
E.D. North Carolina,
Fayetteville Division.

April 25, 1985.

Brian M. Murtagh, U.S. Dept. of Justice, Sp. Prosecutor Section, Washington, D.C., for plaintiff.

Wade M. Smith, Raleigh, N.C., Brian O'Neill, Santa Monica, Cal., for defendant.

## ORDER

DUPREE, District Judge.

Post-trial motions of the defendant, Jeffrey R. MacDonald, having been denied, the government has filed a motion pursuant to Section 1406 of the Victims of Crime Act of 1984, 18 U.S.C. § 3671, seeking forfeiture by MacDonald of all proceeds re-

ceived by him from publication of the book *Fatal Vision* and the airing of a television program by the same name. MacDonald opposes the motion, responding that requiring forfeiture under 18 U.S.C. § 3671 would violate the *ex post facto* clause, article I, section 9, clause 3, of the United States Constitution.

MacDonald's wife and two young daughters were brutally murdered in their apartment at Fort Bragg, North Carolina, on February 17, 1970. Charges against him for the murders were dismissed by the Army in 1970 but a reinvestigation resulted in MacDonald's being indicted for the crimes by a federal grand jury on January 24, 1975. Following a series of pre-trial motions and interlocutory appeals, the case came on for trial in July of 1979.

On July 16, 1979, the first day of jury selection in the case, MacDonald and author Joseph McGinniss, through their attorneys, entered into a contract under which MacDonald granted to McGinniss "exclusive story rights to the life of Dr. Jeffrey R. MacDonald" in return for a percentage of the profits realized from the story rights. MacDonald was convicted by the jury of three counts of murder on August 29, 1979 and his attempts to have the convictions overturned on direct appeal were unsuccessful. *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. MacDonald*, 688 F.2d 224 (4th Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). Four post-trial motions were subsequently filed by MacDonald challenging his convictions, all of which were denied. *United States v. MacDonald*, No. 75–26–CR–3 (E.D.N.C., March 1, 1985); *United States v. MacDonald*, No. 75–26–CR–3 (E.D.N.C., October 1, 1984).

In August of 1983, G.P. Putnam & Sons, a New York publisher, published a book written by Joseph McGinniss about the *MacDonald* case titled *Fatal Vision*. The book was apparently well received, for it served as the basis for a four-hour television program depicting facts of the case as told by the author in the book.[1] The government has submitted documents accompanying its motion for forfeiture which show that from October 2, 1979 through August 7, 1984, MacDonald received $83,101.56 in proceeds under his contract with McGinniss and, according to the government, he will receive additional money in the future from literary and television rights. The record also contains a copy of a complaint filed in a lawsuit brought by MacDonald in the United States District Court for the Central District of California against Joseph McGinniss seeking damages for breach of contract. The government by its motion for forfeiture under 18 U.S.C. § 3671 seems to request forfeiture by MacDonald not only of the proceeds under the contract from October 2, 1979 through August 7, 1984 and any money he receives after August 7, 1984, but also any money he receives by settlement or through judgment in his lawsuit in California.[2]

The government premises its argument for forfeiture on Section 1406(a) of the Victims of Crime Act of 1984, 18 U.S.C. § 3671(a), enacted on October 12, 1984 to take effect November 12, 1984, which provides in pertinent part

> Upon the motion of the United States attorney made at any time after conviction of a defendant for an offense against the United States resulting in physical harm to an individual, and after notice to any interested party, the court shall, if the court determines that the interest of justice ... so requires, order such defendant to forfeit all or any part of proceeds received or to be received by that defendant, or a transferee of that defendant, from a contract relating to a depiction of such crime in a movie, book, newspaper, magazine, radio or television production, or live entertainment of any kind, or an expression of that defendant's thoughts, opinions, or emotions regarding such crime.

---

**1.** I have neither read the book nor seen the television program.

**2.** The specific relief the government seeks is not altogether clear from its motion and briefs.

The Senate Report on the Victims of Crime Act of 1984 states the self-evident purpose of the Act to be "to derive funds for the [victim's assistance] program primarily from wrongdoers who are responsible for the suffering of victims." S.Rep.No. 497, 98th Cong., 2nd Sess. 5, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3607, 3611. This policy and the interests of justice will be served, so argues the government, by requiring MacDonald and his "transferees" to forfeit under 18 U.S.C. § 3671 all proceeds received or to be received from the depiction of the events surrounding his family's murder in 1970.[3] MacDonald replies that the statute was enacted almost fifteen years after the murders for which he was convicted occurred and cannot, therefore, be applied to him because to do so would increase the penalty imposed upon him for the crimes for which he was convicted in violation of the *ex post facto* clause of the Constitution. These arguments join to form a single narrow question to be answered by the court which is whether application of the forfeiture provisions of 18 U.S.C. § 3671 to a criminal defendant who is convicted of crimes committed prior to passage of the statute would violate the constitutional prohibition against *ex post facto* laws.

"So much importance did the [Constitutional] [C]onvention attach to [the *ex post facto* prohibition], ... that it is found twice in the Constitution." *Kring v. Missouri,* 107 U.S. (17 Otto) 221, 227, 2 S.Ct. 443, 448, 27 L.Ed. 506 (1883). The purpose of the *ex post facto* clause, article I, section 9, clause 3, and article I, section 10, clause 1, is to prevent the states and Congress from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed...." *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356

(1867); *see Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

■ In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), a Florida inmate challenged the constitutionality of a Florida statute enacted after his conviction which reduced the amount of gain time for which he was eligible resulting in an extension of his prison sentence by more than two years. Writing for the court in *Weaver,* Justice Marshall explained that "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964 (footnotes omitted); *see Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Dufresne v. Baer,* 744 F.2d 1543, 1546 (11th Cir.1984); *Marshall v. Garrison,* 659 F.2d 440, 444–46 (4th Cir.1981). Because the new Florida statute deprived Weaver of gain time credits which he would have been entitled to under the pre-existing law, the court held that the new law violated the *ex post facto* clause of the Constitution. *Weaver,* 450 U.S. at 36, 101 S.Ct. at 968.

■ Applying the two-part test announced in *Weaver* to the facts in the present case, the court concludes that Section 3671 cannot be constitutionally applied to MacDonald. There can be no doubt that the statute is retrospective within the meaning of the first part of the *Weaver* test. Although the parties have extensively argued the question of whether Congress intended the forfeiture law to be retroactive, "it is the effect, not the form, of the law that determines whether it is *ex post facto*. The critical question is whether the law changes the legal consequences of acts completed before its effective date."[4] *Weaver,* 450 U.S. at 31, 101 S.Ct.

---

**3.** The term "transferee" is not defined in the Act but its definition is not essential to the court's decision.

**4.** The absence of any reference to retroactivity in the statute or its legislative history strongly suggests Congress did not intend the statute to

look backwards. In any event, if the statute is *ex post facto,* what Congress intended becomes irrelevant.

at 965 (footnote omitted). The government by its motion for forfeiture is asking the court to give Section 3671 retroactive effect by requiring MacDonald to forfeit all proceeds received or to be received by him or his transferees under the July 16, 1979 contract and his lawsuit against author Joseph McGinniss. This being so, the statute is retrospective within the meaning of *Weaver* because the government is seeking to change "the legal consequences of acts ... [committed by MacDonald] before [Section 3671's] effective date." *Id.* at 31, 101 S.Ct. at 965.

The second part of the *Weaver* test requires the court to determine if retroactive application of the challenged statute would disadvantage the criminal defendant affected by it. This, of course, is precisely what the government is attempting to do through its motion. Regardless of how the government phrases the argument, its goal is to have MacDonald forfeit the monetary benefits he has received from the crimes for which he was convicted. True, the forfeiture statute serves a valuable purpose in preventing wrongdoers from profiting from their crimes, but, under the *Weaver* test, Section 3671 would be *ex post facto* as applied to MacDonald.[5]

 The government appears to argue that even if Section 3671 is found to be *ex post facto* as applied to events occurring before its effective date of November 12, 1984, MacDonald would yet be subject to its provisions were he to receive any money or enter into any contracts after November 12, 1984. Although not directly addressed by the Supreme Court in *Weaver*, a similar argument was implicit in that case. There, Weaver's sentence straddled the effective date of the Florida statute depriving him of gain time. The court held that his gain time was not to be computed by a new statute or even a hybrid method, but by that law which was in effect when the crimes were committed. *See Weaver*, 450

U.S. at 36, 101 S.Ct. at 968. This is consistent with the well-settled rule that the critical date for *ex post facto* analysis is the date on which the crime was committed by the criminal defendant. *Id.* at 30–31, 101 S.Ct. at 965; *Marshall v. Garrison*, 659 F.2d 440, 442 n.3 (4th Cir.1981). In the present case, MacDonald was convicted by a jury of crimes which were committed in 1970. The court imposed upon him the maximum sentence allowed under the law existing at that time, three consecutive life sentences. The government cannot now constitutionally impose upon him additional punishment even though he has profited from the events surrounding the crimes.

The government's motion for a special order of forfeiture under Section 3671 of the Victims of Crime Act of 1984 is denied.

SO ORDERED.

---

5. MacDonald has also argued that Section 3671 is unconstitutional because it (1) chills speech protected by the First Amendment; (2) violates the due process clause and is a taking of property under the Fifth Amendment; and (3) impairs a criminal defendant's Sixth Amendment right to counsel. In view of the court's decision that Section 3671 is unconstitutional as applied to MacDonald, the court need not address the merits of these arguments.