ANSTEAD, Judge,
with whom DOW-NEY and HURLEY, JJ., join, dissenting in part.
I agree with the majority's disposition of the first two issues. However, petitioner’s claim that the application to him of more stringent parole guidelines adopted after the commission of the crime violates the ex post facto clause of the Florida and U.S. Constitutions presents a more difficult issue. The Commission contends that this claim is foreclosed by Lopez v. Florida Parole and Probation Commission, 410 So.2d 1354 (Fla. 1st DCA 1982). Lopez dealt with a prisoner who committed a crime and was convicted of this crime while the Commission had no objective criteria for determining parole. Lopez later objected to the use of objective guidelines developed after his sentencing. The court denied the ex post facto claim on the basis that “Lopez’s only expectation was that parole would be at the discretion of the Commission.” Id. at 1355. Lobo’s position is significantly different from that of Lopez. At the time of Lobo’s commission of the crime (February 7 and 18,1981), objective guidelines were in effect which sharply limited the discretion of the Commission in determining Lobo’s parole status. His expectation of parole would have been based on these guidelines rather than the broad discretion previously vested in the Commission or the current guidelines which also disfavor him. Thus, the Lopez rationale does not apply.[1]
*625 In Lee v. State, 294 So.2d 305 (Fla.1974), the Florida Supreme Court ruled that a law extending the minimum sentence could not be retroactively applied without violating ex post facto prohibitions. Subsequently, in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court held that a new law that changed the criteria for earning gain time for good conduct could not be applied to a person who had committed a crime while an old and more favorable law was in effect. The Supreme Court held that the new law violated ex post facto prohibitions because it “applied to events occurring before its enactment, and it disadvantaged the offender affected by it.” Id. 450 U.S. at 29, 101 S.Ct. at 964. In short, because the Florida gain time law was applied to a person convicted before the law was passed and because the law reduced that person’s opportunities for gain time, it was declared unconstitutional. The Supreme Court rejected Florida’s contention that because gain time was a matter of grace and not a vested right, ex post facto prohibitions should not apply.
Under Weaver, it would appear that parole is also not immune from ex post facto scrutiny. In Weaver the Supreme Court quoted with approval an opinion of a three judge panel of the District Court in Greenfield v. Scafati, 277 F.Supp. 644 (Mass.1967), aff’d, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), which found “no distinction between depriving a prisoner of the right to earn good conduct deductions and the right to qualify for, and hence earn, parole. Each ... materially ‘alters the situation of the accused to his disadvantage.’ ” 450 U.S. at 34, 101 S.Ct. at 967. Parole considerations have also been relied upon as a basis for permitting a defendant to withdraw a guilty plea. See Norris v. State, 343 So.2d 964 (Fla. 1st DCA 1977); Richmond v. State, 375 So.2d 1132 (Fla. 1st DCA 1979); Green v. State, 406 So.2d 1148 (Fla. 1st DCA 1981). The objective parole guidelines appear to serve the same function as the criteria to be considered under the Florida gain time law. The legislature has specifically mandated that the guidelines be predicated upon objective criteria so that disparities in parole release times for similarly situated prisoners are eliminated. Section 947.002(1) provides:
The present system lacks objective criteria for paroling and, thus, is subject to allegations of arbitrary and capricious release and, therefore, potential abuses. It is the intent of this act to establish an objective means for determining and establishing parole dates for inmates.
In effect, although they are not as precise and are still subject to the exercise of some measure of discretion by the Commission, the guidelines determine within set bounds how much of his sentence a prisoner must actually serve, just as the gain time law does. The fact that the guidelines are administrative regulations rather than statutes would appear to be irrelevant.
That there is a substantial disparity between the new and the old guidelines is pointed out in Lopez:
Lopez was convicted of second degree murder in 1977. At that time parole consideration was in the discretion of the Parole and Probation Commission, § 947.-16 Fla.Stat. (1977). Pursuant to § 947.-165 Fla.Stat. (1979) the Commission enacted objective parole guidelines effective 20 March 1979. Under these guidelines a prisoner convicted of second degree murder with Lopez’s low offender characteristic would have been considered for parole under a matrix time of 18-33 months. Effective 25 June 1979 the Commission amended the rule so that the *626 matrix time applicable to Lopez was 60-84 months.
In 1981 the matrix time for second degree murder was increased by regulation to 80-100 months. Fla.Adm.Code Rule 23-21.09 (1981). Hence, a prisoner whose release time is computed under the original guidelines would face a maximum matrix time of 33 months while a prisoner rated under the current guidelines would face a minimum of 80 months, a substantial disparity, indeed.
In short, Lobo alleges, and the Commission does not deny, that the new guidelines were used to determine his PPRD, notwithstanding that the new guidelines disadvantage him and that he committed the crime while the old guidelines were in effect. Thus, in my view, under Weaver, Lobo does state a valid ex post facto objection and he is entitled to the benefit of the guidelines that were in effect when he committed the crime.

. In addition, I cannot agree with the Commission’s and the Lopez court’s reliance on and analysis of Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977). Dobbert dealt with three separate ex post facto challenges to the Florida death penalty statute. *625 The first challenge was that the statute changed the function of judge and jury. In response to this challenge, the Supreme Court stated that procedural changes did not violate ex post facto prohibitions. The second challenge is irrelevant here. The third challenge dealt with changes in parole release dates. The Supreme Court did not rule on this challenge because the petitioner had no standing to raise the issue. Thus, the language concerning procedural changes was not applied to changes in parole computations. Thus, in my view, neither the rationale of Lopez nor the rationale of Dobbert foreclose an ex post facto challenge to the use of new parole guidelines in calculating Lobo’s PPRD.