Anthony M. PAYTON, Plaintiff,

v.

Patrick J. FIEDLER and Steven Puckett, Defendants.

Civ. A. No. 93–C–0044.

United States District Court, E.D. Wisconsin.

June 17, 1994.

Anthony M. Payton, pro se.

Charles D. Hoornstra, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendants.

## DECISION AND ORDER

REYNOLDS, District Judge.

Pro se plaintiff Anthony Payton ("Payton"), a former prisoner, claims that defendants, officials of the Wisconsin Department of Corrections ("the Department"), violated

the ex post facto clause of the United States Constitution by determining his "security classification" on the basis of amendments to the pertinent regulations which took effect long after the date of his offense and conviction. Defendants have filed a motion to dismiss for failure to state a claim. For reasons set forth below, the motion will be granted.[1]

Payton was convicted on March 14, 1983, and was sentenced on May 24, 1983, to a prison term of 10½ years. Six years later, on March 14, 1989, he was released on mandatory parole. On May 27, 1992, his parole was revoked and he was returned to prison. Upon his return, Payton appeared before a Program Review Committee ("the Committee"), which determined that his security classification did not permit his being held in a minimum security facility. The determination (later affirmed by defendant Steven Puckett, Director of the Department's Office of Offender Classification) was based in part on a "risk rating system" developed in accordance with subparagraph (15) of the following regulation:

**DOC 302.14 Factors in assigning a security classification.** The following factors may be taken into consideration in assigning a security classification to an inmate:

(1) The nature of the offense of which the inmate was convicted ...;

(2) The criminal record of the inmate;

(3) The length of sentence being served;

(4) The motivation for the crime of which the inmate was convicted;

(5) The inmate's attitude toward the offense and sentence;

(6) The inmate's vulnerability to physical assault by other inmates;

(7) The inmate's prior record of adjustment in a correctional setting, including any record of escape;

(8) The length of time the inmate has been in a particular security classification and institution;

(9) The medical needs of the inmate, including the need for physical or psychological treatment;

(10) Time already served for the offense;

(11) The reaction to the inmate in the community where the offense was committed or in the community where the institution is located;

(12) The inmate's conduct and adjustment in the general population of the institution;

(13) The inmate's performance in programs;

(14) A detainer filed with respect to the inmate ...;

(15) The inmate's risk rating as high risk, moderate risk or low risk, determined by employing the department's risk rating system.... In this subsection, "risk rating system" means the interpretive guidelines, procedures and forms used to assess the risk that an inmate presents to public safety and to the security and management of the correctional institution.

Wis.Admin.Code § DOC 302.14.

Subparagraph (15) was added to Section 302.14 on December 7, 1988; the regulation previously included only subparagraphs (1) through (14). Under the risk-rating system developed pursuant to the 1988 amendment, the prisoner is evaluated on the basis of several criteria ("current offense," "offense history," "sentence structure," "institution adjustment," "escape history," "emotional/mental health," "behavior/attitude and program participation," and "temporary factors") which roughly correspond to the criteria listed in subparagraphs (1) through (14) of Section 302.14. (Mar. 12, 1993 Pl.Br., Ex. A at ii.) For each criteria, the prisoner is rated as "high risk," "moderate risk," or "low risk." (*Id.*, Ex. A.) An "interpretive" guideline suggests how these ratings may be applied to the determination of a prisoner's security classification under Section 302.14. (Mar. 23, 1993, Bett Aff., Ex. 1.)

---

**1.** Payton was released from the Department's custody in July 1993, and so only his claim for monetary relief remains viable.

The risk-rating system, Payton contends, is "stricter" than the policy in effect prior to the 1988 amendment to Section 302.14 in at least two respects: first, the previous policy placed much greater emphasis on the length of time the prisoner had yet to serve (Payton says he had less than a year remaining); and, second, the current policy looks much further into the prisoner's past in considering his criminal history. Had his security classification been determined on the basis of the prior policy, Payton contends, he would have been permitted to transfer to a minimum security facility. This assertion is assumed to be true for purposes of addressing defendants' motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ The ex post facto clause, U.S. Const. Art. I, § 10, cl. 1, prohibits the state from "retrospective[ly]" imposing or increasing "punishment." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981). A law applies retrospectively if it "changes the legal consequences of acts completed before its effective date." *Id.* at 31, 101 S.Ct. at 965. Defendants contend that in Payton's case the 1988 amendment was not applied retrospectively because the relevant "acts" were those which constituted his violation of the conditions of parole, and which thus resulted in his being returned to prison. At the time he committed these acts, defendants point out, the 1988 amendment had already gone into effect, so that before committing them Payton had "fair notice" that the risk-rating system would apply to him if he were caught. *See id.* at 30, 101 S,Ct. at 965 (noting that "lack of fair notice" is "[c]ritical to relief under the Ex Post Facto Clause").

■ **While the acts underlying Payton's parole violation may have been a direct cause** of the risk-rating system's application to him, however, they were not the acts, or not the only acts, to which the system attached significance. Rather, Payton alleges (and defendants apparently do not dispute) that the risk-rating system took into account a number of other acts, including those underlying Payton's conviction and sentence, which took place before the system became effective. To the extent the system changed the legal consequences of these acts, it applied retrospectively.

■ The next question is whether the consequences of Payton's security classification constituted "punishment." *See Weaver,* 450 U.S. at 28–30, 101 S.Ct. at 963–65. It is not relevant to this question that Payton's sentence did not formally prescribe any particular method of determining his security classification, for a law may violate the ex post facto clause "even if it alters punitive conditions outside the sentence." *Id.* at 32, 101 S.Ct. at 966. Still, the condition altered must be punitive, and a condition of imprisonment is not punitive for purposes of the ex post facto clause merely because it makes imprisonment more difficult for a particular prisoner. Rather, a condition is punitive, generally, only if it is intended to be punitive. *Dyke v. Meachum,* 785 F.2d 267, 268 (10th Cir. 1986) (citing *DeVeau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109 (1960); *Glynn v. Auger,* 678 F.2d 760, 761 (8th Cir.1982).)

■ In *Dyke,* the court held that a prison regulation which increased the amount of time prisoners must serve before becoming eligible for "minimum security status" concerned "the internal administration of a prison" and thus would not be considered punishment in the absence of some showing that it was intended as such. 785 F.2d at 268. The same is true, this court concludes, of the security classification policies at issue here. Neither the nature of the **restrictions imposed as the result of a particular classification, nor the content of the applicable** regulations, suggest that the classification system was to be used as a component of punishment. *See* Wis.Admin.Code §§ DOC 302.01 to 302.20. This case is therefore quite unlike *In re Medley,* 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890), where the Supreme Court held the ex post facto clause to be violated by a statute retroactively requiring that prisoners awaiting execution be kept in solitary confinement, for there the nature and history of such confinement were found clearly to evince a punitive purpose. *Id.* at 167–170, 10 S.Ct. at 386–87.

Because the court concludes that the Department's security classifications are not a component of punishment for purposes of the ex post facto clause, defendants' motion to dismiss will be granted.

**IT IS THEREFORE ORDERED** that defendants' March 3, 1993 motion to dismiss is GRANTED and this action DISMISSED.