HARRY LEE WARD,            )
                                      )

      Plaintiff/Appellant,     )     Appeal No.

                                      )     01-A-01-9807-CH-00350

v.                               )

                                      )     Davidson Chancery

DONAL CAMPBELL,          )     No. 98-1176-I

                                      )

      Defendant/Appellee.    )

FILED

July 16, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY,

TENNESSEE, AT NASHVILLE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

HARRY LEE WARD, Pro Se
TCIP, Route 1
Only, Tennessee 37140

PAUL G. SUMMERS
Attorney General & Reporter

MICHAEL E. MOORE
Solicitor General

STEPHANIE R. REEVERS
Civil Rights and Claims Division
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, Tennessee 37243-0488
     ATTORNEYS FOR APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case involves a constitutional challenge to the application of a certain policy of the Tennessee Department of Correction ("the Department"). The petitioner, an inmate in the Department, filed this declaratory action asking the court to declare unconstitutional one of the Department's disciplinary policies, Policy 502.02, as it applied to him. This policy, which was enacted after the petitioner was initially sentenced, provides for an extension of the date of an inmate's parole eligibility as a punishment for the inmate's commission of a disciplinary offense while in prison. The trial court granted a rule 12 motion dismissing the petitioner's action for its failure to state a claim upon which relief could be granted. We affirm the trial court's decision.

## II.

The petitioner/appellant in this action is Harry Ward who is currently an inmate in the custody of the Tennessee Department of Correction. In 1981, Mr. Ward was convicted of four counts of armed robbery with a deadly weapon as well as a count of petit larceny for which he received a sentence of 30 years in prison. Additionally, Mr. Ward was adjudicated a habitual criminal and was sentenced to life in prison. The effective date of Mr. Ward's sentence for the robbery convictions was January 21, 1981 and for the life sentence was February 1, 1983.

While imprisoned, Mr. Ward committed institutional disciplinary offenses by assaulting two officers on two different occasions. After the first of these in 1993, the Department Disciplinary Board punished Mr. Ward by extending his parole release eligibility date. The Board increased the proportion of the sentence that Mr. Ward must serve before becoming eligible for parole from 35% to 65% which effected an increase in his release eligibility date (RED) from the years 2010 to 2040. Again in June of 1994, disciplinary charges were pressed against Mr. Ward for the assault of another staff member. As a result, the proportion of his sentence that must be served before he could be eligible for parole increased from 65% to 95% and his RED increased from 2040 to 2070.

2

It is Mr. Ward's position that the Department was wrong in increasing the proportion of his mandatory sentence in these two instances. The Department implemented this punishment for Mr. Ward's disciplinary offenses pursuant to its Policy 502.02 which was not in effect at the time that his initial crimes were committed in 1981. Mr. Ward claims that the imposition of this policy against him amounts to a violation of the ex post facto clauses of the state and federal constitutions and the due process clause of the Fourteenth Amendment. He argues that he may not receive a greater punishment than he would have received under the prior law.

The Department of Correction denied Mr. Ward's pro se request for a declaratory order finding that his contentions regarding this disciplinary action were erroneous and without merit. The Department stated that the fact that Mr. Ward was convicted of a felony in 1981 was irrelevant. Departmental policy regarding the consequences of disciplinary hearings was in effect in sufficient time, since February of 1989, for him to be aware of the penalty for improper actions on his part such that there was no ex post facto violation. Further, there was no due process violation since he was found guilty in a proper disciplinary hearing with all due process provisions in place. Finally, the Department stated that because Mr. Ward's request was for action on a policy matter, it was not subject to a declaratory order pursuant to Tenn. Code Ann. § 4-5-102(10)(A) (1991).

In the trial court, the state filed a motion for a Rule 12.02(6) dismissal for Mr. Ward's failure to state a claim for relief. The trial court granted said motion reasoning as follows:

> At the time of the petitioner's crime and conviction, release eligibility for Class X felons was governed by Tenn. Code Ann. § 40-28-301, which provided in part:
> (h)(1) The release [classification] eligibility date provided for in this section shall be the earliest date a person convicted of a Class X felony shall be eligible for release classification status, such date being conditioned on the prisoner's good behavior while in prison. For a violation of any of the rules of the department of correction or the institution in which the person is incarcerated the commissioner of correction or his designees, may defer

3

the release classification eligibility date so as to increase the total amount of time a person must serve before becoming eligible for release classification status. This increase may, in the discretion of the commissioner, be in any amount not to exceed the full sentence originally imposed by the court and shall be imposed pursuant to regulations promulgated by the commissioner of correction.

The petitioner had notice that, pursuant to Tenn. Code Ann. § 40-35-[5]01, his release eligibility date was conditioned on his good behavior and that the Commissioner could defer his release eligibility date for a violation of department rules. The petitioner's release eligibility date was extended because he violated department rules.

Tenn. Code Ann. § 40-35-[5]01(h) provides that an inmate's release eligibility date may be increased in any amount not to exceed the full sentence originally imposed by the court. The petitioner's original sentence was a life sentence. His original release eligibility date was based on the service of 35% of his life sentence. The effect of extending his release eligibility date by 60% is that the petitioner is not eligible for release until after service of 95% of his sentence, which does not exceed the full sentence originally imposed. The petitioner's release eligibility date was extended pursuant to a law which was in effect at the time of the petitioners' crime and conviction.

II.

This issue has been before this court on more than one occasion and we have consistently held that Policy 502.02 is not an unconstitutional ex post facto law. *Ogburn v. Tennessee Dept. of Correction*, 983 S.W.2d 677, 679 (Tenn. App. 1998); *Rowland v. Bradley*, 899 S.W.2d 614 (Tenn. App. 1994); *Blankenship v. Campbell*, No. 01A-01-9603-CH-00099, 1996 WL 346682 at *2 (Tenn. App. 1996). "An ex post facto law imposes punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Ogburn*, 983 S.W.2d at 679 (quoting *Blankenship,* 1996 WL 346682 at *2 (quoting *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1991))). Policy 502.02 was in effect at the time that Mr. Ward committed each institutional offense and thus the consequences that could result from his actions were fixed and have not been increased by subsequent legislation. *See Rienholtz v. Bradley*, 945 S.W.2d 727, 730 (Tenn.

App. 1996). Mr. Ward's original sentence is unchanged; he is simply required to serve a greater percentage of that sentence due to his failure to demonstrate good behavior while in prison.

Although Mr. Ward alleged that his due process rights have been violated, he does not allege any facts to support this conclusion. Mr. Ward does not assert that he was deprived of notice, a hearing, the right to be present, nor the right to produce evidence on his own behalf. Therefore, we find that he has not stated a claim based on a lack of due process.

### III.

We agree with the trial court in both its reasoning and its conclusion. Mr. Ward has not shown that the law inflicted a greater punishment on him than was permissible at the time of his offense. In addition, we find that Mr. Ward has failed to present the facts which would constitute a claim for a due process violation. The trial court is therefore affirmed.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, J.

5