# 2001 DTA 138

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN, PANEL IV**

CARMELO BRAU SERRANO
Apelado

v.

JUNTA DE LIBERTAD BAJO PALABRA; ESTADO LIBRE ASOCIADO DE PUERTO RICO
Apelante

Núm. KLAN-2000-01219

San Juan, Puerto Rico, a 28 de marzo de 2001

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el recurso de apelación ante nuestra consideración, comparece el Procurador General (*"Procurador"*), en representación de la Junta de Libertad Bajo Palabra (*"Junta"*) y solicita la revisión de la Sentencia emitida el 31 de agosto de 2000, por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el Caso Núm. KPE-2000-0501, sobre Sentencia Declaratoria. Copia de la notificación dicha sentencia fue archivada en autos el 6 de septiembre de 2000.

Por los fundamentos que expresamos a continuación, revocamos la sentencia apelada.

### I

Carmelo Brau Serrano (*"Brau"*) ha estado bajo la custodia legal de la Administración de Corrección desde el año 1984. Cumple una sentencia de sesenta (60) años por los delitos de robo, daños agravados, secuestro, ley de armas y tentativa de asesinato, entre otros. Brau fue sentenciado por primera vez en 1981 cuando tenía veinte (20) años. Posteriormente, cometió otros delitos, por los que fue sentenciado en los años 1983 al 1986. El mínimo de su sentencia lo cumplió en octubre de 1999 y el máximo en octubre de 2016. Por haber realizado un ajuste institucional excelente, Brau disfrutaba de custodia mínima desde el 1995.

Durante el tiempo que Brau ha permanecido en instituciones penales, en total más de dieciséis años, nunca se benefició de ningún programa de desvío, comunitarios, o de pases de la Administración de Corrección. No obstante, sí se ha beneficiado de los programas, cursos escolares y terapias psicológicas y sicoadictivas disponibles en la institución, y ha demostrado, además, su arrepentimiento por los delitos cometidos. En vista de lo anterior, la Administración de Corrección refirió su caso a la JLBP.

El 2 de diciembre de 1999, fue celebrada la vista ante la JLBP para evaluar la solicitud de libertad bajo palabra de Brau. Este cumplía con los requisitos para que se le concediera la libertad bajo palabra, estos son: plan de salidas viable, amigo consejero idóneo, no dependencia del alcohol o drogas narcóticas, buen ajuste institucional, excelente historial de estudios y/o trabajos y buena disposición y actitud de su grupo familiar para apoyarle en su ajuste en la libre comunidad. Como consecuencia de ello, el Oficial Examinador recomendó favorablemente a Brau para que le fuera concedida la libertad bajo palabra. Sin embargo, la propia JLBP pospuso su determinación de conceder el privilegio solicitado, pues tomaron la misma sin haber cumplido con las disposiciones de la Ley 90 de 27 de julio de 1995, 4 L.P.R.A. sec. 1503 (*"Ley 90"*).

Inconforme con la determinación de la JLBP de aplicar retroactivamente la Ley 90 a su caso, Brau acudió al tribunal de instancia el 16 de febrero de 2000 mediante solicitud de Sentencia Declaratoria. Específicamente, alegó que la aplicación retroactiva de la Ley 90 a la controversia de epígrafe está prohibida constitucionalmente bajo la cláusula de aplicación de leyes *ex post facto* de la Constitución del Estado Libre Asociado de Puerto Rico y de la Constitución Federal. Además, alega Brau, esto viola su derecho constitucional a la rehabilitación, según garantizado por el Artículo VI, Sección 19 de nuestra Constitución. La vista inicial del recurso ante el

tribunal de instancia fue señalada para el 3 de marzo de 2000.

A pesar de que Brau fue liberado bajo palabra el 26 de mayo de 2000, el tribunal de instancia resolvió el caso de autos al entender que, por la naturaleza de la controversia planteada, podía considerarlo como una excepción a la doctrina de academicidad.

Finalmente, el 31 de agosto de 2000, el tribunal de instancia emitió sentencia en la que resolvió que la prohibición constitucional de leyes *ex post facto* impedía que la JLBP aplicara la Ley 90 a Brau, por éste haber sido sentenciado antes de la vigencia de la misma. Inconforme con esta determinación, compareció ante nos el Procurador en representación de la JLBP, mediante escrito de apelación presentado el 3 de noviembre de 2000.

Luego de examinar la totalidad del recurso ante nuestra consideración, estamos en posición de resolver. Veamos.

## II

Aunque no ha sido planteado ante este Tribunal, discutiremos, en primer lugar, si actuó correctamente el tribunal de instancia al decidir que el recurso ante sí no se había tornado académico por razón de la JLBP haber concedido el privilegio de la libertad bajo palabra a Brau el 26 de mayo de 2000.

Nuestro Tribunal Supremo ha establecido que la doctrina de academicidad constituye una de las manifestaciones concretas del concepto de justiciabilidad, la cual acota los límites de la función judicial. *Angueira Navarro v. Junta de Libertad Bajo Palabra*, **2000 J.T.S. 1**, a la pág. 432, Opinión de 11 de enero de 2000. Añade dicho Tribunal que *"un caso se torna académico cuando su condición de controversia viva y presente sucumbe ante el paso del tiempo"*. *Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad de Empleados Telefónicos*, **2000 J.T.S. 83**, a la pág. 1093, Opinión de 11 de mayo de 2000. Sin embargo, nuestro más alto foro ha reconocido circunstancias especiales en las cuales los tribunales pueden atender un caso que se ha tornado académico. *Id*. Una de estas circunstancias ocurre cuando en un caso se plantea una cuestión recurrente, es decir, *"susceptible de volver a ocurrir, pero que, por la naturaleza efímera de los hechos que provocan la cuestión, es difícil que logre ser dilucidada por los tribunales"*. *Id*. Sobre el particular, nos indica el Tribunal Supremo lo siguiente:

*"La excepción sobre el carácter recurrente o repetitivo de la controversia exige el estudio de tres (3) factores: la probabilidad de la recurrencia, las partes involucradas en el procedimiento, y la probabilidad de que la controversia evada adjudicación o revisión judicial.*

*El elemento principal en el proceso de concluir si una determinación afirmativa de academicidad promoverá la finalidad de la autolimitación judicial, es la probabilidad de la recurrencia. Cuando existe la probabilidad de que la controversia se repita o recurra, los tribunales debemos considerar el asunto planteado, a pesar de que el mismo haya advenido académico. Angueira Navarro v. Junta de Libertad Bajo Palabra, supra, a la pág. 432."*

Por otro lado, el Tribunal Supremo ha señalado que, para que aplique la excepción del carácter recurrente, no es necesario que al repetirse la controversia ésta afecte a las mismas partes. *Id*. Lo importante es, además del carácter recurrente de la controversia, que ésta sea de naturaleza tal que evada la adjudicación o revisión por parte de un tribunal. *Id*., a las págs. 432-433.

En el caso ante nos, si aplicamos los tres (3) factores antes mencionados, no cabe duda que estamos ante una excepción a la doctrina de academicidad. En primer lugar, vimos que no es necesario que la controversia, de repetirse, afecte a las mismas partes. Lo esencial es que sea una controversia de carácter recurrente y que, dada su naturaleza, evada la revisión judicial. Ambos requisitos están presentes en el caso de epígrafe. No cabe duda que surgirán nuevamente casos en que un convicto, encarcelado antes de la vigencia de la Ley 90, *supra*,

solicite el privilegio de la libertad bajo palabra. También es muy probable que se repitan las circunstancias del caso de epígrafe en que al convicto se le concedió el privilegio mientras la impugnación de la Ley 90 era sometida a revisión judicial. Por tanto, procede que apliquemos la excepción a la doctrina de academicidad y veamos los méritos del caso.

## III

Mediante la aprobación de la Ley Núm. 22 de 22 de abril de 1988, 4 L.P.R.A. sec. 1501, se creó la Carta de Derechos de las Víctimas y Testigos de Delitos. De esa manera *"[s]e estableció una política pública vigorosa dirigida a proveer protección y asistencia a las víctimas y testigos en los procesos judiciales y en las investigaciones que se realicen a raíz de la comisión de actos delictivos"*. *Angueira Navarro v. Junta de Libertad Bajo Palabra, supra*, a la pág. 433. Entre las garantías que concede dicha Carta, se encuentra el derecho de toda víctima a ser informada de los procedimientos posteriores a la sentencia cuando ésta o un testigo lo solicite a las autoridades pertinentes. *Id.*

Posteriormente, nos dice nuestro Tribunal Supremo, *"la Asamblea Legislativa expandió esos derechos para que las víctimas tuvieran la oportunidad real de desempeñar un rol más activo en el procesamiento y rehabilitación del autor del delito"*. *Id.* A esos efectos, la Ley 90, *supra*, enmendó la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 501 *et seq.*

Según ha establecido el Tribunal Supremo, la *"política pública [tras la aprobación de la Ley 90] pretende lograr la integración activa de la víctima en los procedimientos posteriores a la convicción del autor del delito y, en particular, su participación en si al convicto se le concede, revoca o modifica, sustancialmente, las condiciones para el disfrute del privilegio de la libertad bajo palabra"*. *Angueira Navarro v. Junta de Libertad Bajo Palabra, supra*, a la pág. 434. Añade dicho Tribunal que la Ley 90, *supra*, *"[f]ue concebida como un paso adicional en los componentes que integran nuestro 'sistema de Justicia Criminal' para salvaguardar los derechos de las víctimas de delitos de una manera no menos vigorosa que los derechos de los acusados"*. *Id.* Dicha ley otorga los siguientes derechos a las víctimas de un delito:

*"§ 1503a. Derechos de la víctima de delito*

*En aquellos procedimientos que se celebren con motivo de la concesión o modificación del privilegio a la libertad bajo palabra, y en la vista final para su revocación, se garantizará a la víctima del delito por el cual fue convicto el liberado o la persona recluida, los siguientes derechos:*

*(1) Comparecer, ya sea oralmente o por escrito, para presentar ante la Junta su opinión sobre:*

*(a) La determinación que en su momento deba tomarse con relación al beneficio del privilegio, y*

*(b) el impacto económico, emocional o físico, que ha causado la comisión del delito sobre la víctima y su familia.*

*(2) Estar presente como observador en la vista.*

*(3) Mediante solicitud al efecto, testificar en la vista en ausencia del liberado o confinado. 4 L.P.R.A. sec. 1503a."*

Por otro lado, la sección 1503b de la Ley de la Junta, *supra*, añade que dicho organismo será responsable de notificar por escrito a la víctima sobre la celebración de la vista, con no menos de quince (15) días laborables de anticipación.

La controversia ante nos gira en torno a si la aplicación de la Ley 90 a un confinado que solicita el beneficio de la libertad bajo palabra, y que fue sentenciado antes de la vigencia de dicha ley, constituye una violación a la

prohibición constitucional de las leyes *ex post facto*. Específicamente, Brau alegó ante el foro recurrido que la Ley 90 impone un requisito adicional a la JLBP para adquirir jurisdicción y que el mismo afecta el cumplimiento de los términos dispuestos en el Reglamento 3570 de dicho organismo; en particular, el Artículo XI, Secciones 11.1 y 11.2. Dicho Artículo dispone, en las secciones citadas, lo siguiente:

*"SECCION 11.1: Términos para Decidir*

*Una vez celebrada la vista, la Junta deberá tomar una decisión dentro de los treinta (30) días laborables siguientes a la fecha de la misma en casos de delitos graves;...*

*SECCION 11.2: Término para Notificar*

*Tomado el acuerdo, la Junta deberá notificar al confinado dentro de los veinte (20) días siguientes a la fecha de la decisión con copia de la misma, incluyendo los fundamentos para dicha determinación."*

Para determinar si la aplicación de la Ley 90, *supra*, perjudica la posición de los confinados sentenciados antes de la aprobación de la misma, y si esto resulta en una violación a la prohibición de la aprobación de leyes *ex post facto*, es necesario discutir esta doctrina.

Tanto nuestra Constitución en su Artículo II, Sección 12, como la Constitución de los Estados Unidos, Artículo I, Sección 9, prohíben la aprobación de leyes *ex post facto*. A su vez, el artículo 4 del Código Penal, 33 L.P.R.A. sec. 3004, incorpora la prohibición constitucional antes señalada y añade el principio de la aprobación de la ley más benigna, al disponer que:

*"Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito. Si la ley vigente al tiempo de cometerse el delito fuera distinta de la que existía al imponerse la sentencia, se aplicará siempre la más benigna. Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución, la misma se limitará a lo establecido por esa ley."*

Por su parte, nuestro Tribunal Supremo ha aclarado que una ley penal resulta ser *ex post facto* en su aplicación, cuando: 1) considera delictivo y castiga un acto que al ser realizado, no era punible; 2) si agrava un delito y lo hace mayor de lo que era al momento de ser cometido; 3) altera las normas de evidencia y exige más prueba o prueba distinta a la exigida por la ley vigente a la fecha de la comisión del delito; 4) en relación al delito y sus consecuencias, altera la situación del acusado en forma desfavorable para él. *Pueblo en interés del menor F.R.F.*, 133 D.P.R. 172, 180-181, nota al calce 9 (1993).

De esta manera, la cláusula en cuestión prohíbe la aplicación de una ley penal a un imputado, acusado o convicto, si tal ley: (1) tiene vigencia posterior a los hechos delictivos imputados o cometidos, y (2) coloca al imputado o al acusado en una situación desfavorable o perjudicial, en relación con el estado de derecho vigente al momento de la comisión de los hechos delictivos. E. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, Ed. Forum, Bogotá, 1992, a la pág. 549. Para determinar si la ley es perjudicial al imputado, acusado o convicto, se consideran las circunstancias del afectado bajo la ley anterior y la posterior, con miras a establecer si existe el perjuicio o, por el contrario, si existen beneficios. *Id.*

La protección contra las leyes *ex post facto* opera esencialmente en torno al derecho penal sustantivo: delito, pena y medidas de seguridad. *Id.*; *Pueblo en interés del menor F.R.F.*, *supra*, a la pág. 181, nota 9. No obstante, si una ley procesal incide sobre los derechos sustantivos del acusado, está sujeta a esta cláusula. *Pueblo v. López*, 70 D.P.R. 790, 791-792 (1950). No es necesario tampoco que la ley menoscabe derechos intrínsecos o adquiridos ("*vested rights*") para que sea considerada *ex post facto*. Esta cláusula constitucional puede ser violada cuando una ley altera gracias penales concedidas por merced legislativa, como sucede con los privilegios que forman parte integral de una sentencia. E. Chiesa, *supra*, a las págs. 547-548; *Weaver v.*

*Graham*, 450 U.S. 24, 30 (1981) Entre estos últimos se encuentran aquellos privilegios, tales como la sentencia suspendida y la libertad bajo palabra, que afectan el tiempo de prisión que puede efectivamente cumplir un confinado y que pueden constituir factores de peso en la decisión de aceptar un pre-acuerdo. *Id.; Weaver v. Graham, supra,* a la pág. 32.

Por otro lado, aunque se ha interpretado que la doctrina sobre leyes *ex post facto* es un atributo exclusivo de estatutos de carácter penal, hoy día se reconoce que lo importante es determinar si la ley tiene efectos punitivos independientemente de su naturaleza criminal o civil. Raúl Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Vol. II, Cap. X, pág. 852, 1988. Si el esquema del estatuto es tan punitivo en su propósito y efecto, ello derrota cualquier intención de la legislatura de considerarlo civil. *Kansas v. Hendricks*, 521 US 346, 361-363 (1997).

A su vez, para determinar si un estatuto es de carácter punitivo, el Tribunal Supremo de los Estados Unidos ha utilizado el criterio de intención-efectos (*"intent-effects test"*). *Kansas v. Hendricks, supra*. Para aplicar este análisis, primero hay que evaluar si fue la intención del legislador promulgar un estatuto de naturaleza punitiva o remedial. Segundo, aunque el propósito de la ley sea remedial, hay que determinar si su efecto es a tal grado punitivo que niega la intención declarada por el legislador. *United States v. Ward*, 448 U.S. 242, 249 (1980).

En el caso ante nos, el estatuto en controversia, la Ley 90, declara en su exposición de motivos que la política pública tras su aprobación, es lograr la integración de la víctima en los procedimientos posteriores a la convicción del autor del delito; en particular, su participación en la determinación de si al convicto se le concede, revoca o se le modifican, sustancialmente, las condiciones para el disfrute del privilegio de la libertad bajo palabra. Del propio texto de la Ley 90 surge que se le garantiza a la víctima del delito el derecho a opinar sobre la determinación a tomarse en relación con el beneficio del privilegio y sobre el impacto que la acción delictiva ha causado en ella y su familia. También tiene derecho a estar presente en la vista como observador y a testificar, si así lo solicita. Por su parte, la JLBP es responsable de notificar a la víctima, por escrito y con anticipación, sobre la celebración de la vista. Igualmente se establece, como regla general, que la vista será pública. Sobre la participación de la víctima y sus efectos sobre la concesión del privilegio, nuestro Tribunal Supremo expresó lo siguiente:

*"[E]s menester recordar el alcance de la intervención de la víctima de delito. Su opinión es sólo otro factor a considerar por la Junta. No puede configurarse el derecho a opinar [de la víctima] como un poder de veto. La determinación sobre el grado de rehabilitación del confinado y si éste está calificado y capacitado para continuar su sentencia mientras se reintegra a la sociedad, es prerrogativa de la Junta, Angueira Navarro v. Junta de Libertad Bajo Palabra, supra, a la pág. 436."*

Conforme al texto de la Ley 90, su Exposición de Motivos y las expresiones del Tribunal Supremo, no se desprende que la intención del legislador haya sido punitiva. Por el contrario, la promulgación de dicho estatuto buscó integrar a las víctimas de delitos con los procedimientos posteriores a la convicción de los autores de dichos delitos. Por tanto, podemos concluir que se trata de un propósito remedial y no uno dirigido a penalizar. Procede determinar, entonces, si el efecto de esta ley es punitivo.

El Reglamento 3570 de la JLBP, en vigor desde el 9 de marzo de 1988, dispone que, al considerar un caso para libertad bajo palabra, la Junta tendrá ante sí, entre otras cosas, *"la actitud del perjudicado y su familia"*. Reglamento Número 3750 de la Junta de Libertad Bajo Palabra, Artículo IX. Es decir, la JLBP podía, desde antes de la aplicación de la Ley 90, auscultar el sentir de la víctima de delito y sus familiares antes de conceder la libertad bajo palabra. La Ley 90 lo que hace es garantizar, expresamente, unos derechos que ya la víctima tenía. Lo único que requiere dicha Ley es que a la víctima se le notifique con quince (15) días de anticipación a la celebración de la vista.

A la luz de lo antes expuesto, concluimos que la Ley 90 no es de carácter, ni tiene efectos punitivos.

Tampoco añade requisitos adicionales para conceder la libertad bajo palabra a un convicto. Por tanto, no se viola la cláusula constitucional que prohíbe las leyes *ex post facto*, cuando se aplica la Ley 90 a convictos, sentenciados antes de su aprobación, que solicitan el privilegio de libertad bajo palabra. No obstante, la JLBP no puede incumplir con las disposiciones de su Reglamento, sobre el término de treinta (30) y veinte (20) días para emitir su decisión y notificarla, respectivamente, en aras de cumplir con las disposiciones de la Ley 90. Esta última dispone, claramente, que la JLBP tiene que notificar a la víctima con, por lo menos, quince (15) días de anticipación a la celebración de la vista.

### IV

Por los fundamentos antes expuestos, revocamos la determinación del tribunal de instancia.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General