Larry Norris, Director Arkansas Department of Correction Post Office Box 8707 Pine Bluff, AR 71611-8707
Dear Director Norris:
I am writing in response to your request for my opinion on several questions arising from the following reported facts:
 The ADC has an individual who is currently serving a thirty (30)-year sentence for Murder in the First Degree. That sentence of thirty (30) years was imposed on February 14, 2003. That crime was committed on April 5, 1977. The individual also had a 1986 conviction for Burglary that is prior to his 2003 First Degree Murder conviction date. We believe the 2003 conviction falls under the parole eligibility provisions as described in A.C.A. 16-93-604 based on the date of the offense.
Against this backdrop, you have posed the following questions:
 1. Would the provisions of A.C.A. § 16-93-604
govern the parole eligibility of an inmate who is currently serving a 30-year sentence for a 2003 conviction of a murder in the first degree committed on April 5, 1977 and who also has a 1986 conviction for burglary?
 2. Is this individual a first termer for parole eligibility who must serve at least one third of his sentence with credit for good-time allowances, as described in A.C.A. 16-93-604(b)(2); or is he a second termer for parole eligibility who must serve one half of his sentence with credit for good-time allowances as described in A.C.A. 16-93-604(b)(3)?
 RESPONSE
With respect to your first question, I believe A.C.A. § 16-93-604 will indeed govern the inmate's parole eligibility, subject to the significant qualifier that any provision of current law that is more onerous than the parole-eligibility law in effect on the date that the inmate committed the murder will be unenforceable as violating theex post facto provisions of the state and federal constitutions. The only provision of current law that falls within this exception provides that an inmate who would otherwise qualify as a first offender must nevertheless serve at least one half of his term, subject to good-time allowances, before being eligible for parole if he was convicted of a Class Y felony. With respect to your second question, the inmate is a "first-termer" if he was not incarcerated for the burglary conviction and a "second-termer" if he was. In either event, again subject to good-time allowances, he will be obliged to serve one half of his sentence before being eligible for parole if the court determined that he used a deadly weapon in committing his offense.
Question 1: Would the provisions of A.C.A. § 16-93-604 govern theparole eligibility of an inmate who is currently serving a 30-yearsentence for a 2003 conviction of a murder in the first degree committedon April 5, 1977 and who also has a 1986 conviction for burglary?
In my opinion, the answer to this question is "yes," subject to the condition that any provision of this statute that is more onerous than the parole-eligibility law in effect on the date of the murder will be unenforceable as an impermissible ex post facto law.
As the Arkansas Supreme Court noted in Bosnick v. Lockhart,283 Ark. 206, 207-09, 672 S.W.2d 52 (1984):
 The appellant contends that the application of the 1977 act[1] is a violation of the ex post facto provisions of the Arkansas and U.S. Constitutions because that act was not in effect at the time his crime was committed. We agree.
We have said that "a parole statute less favorable to one who had been sentenced prior to its passage than the parole law existing at the time of his sentencing would be unconstitutional as an ex post facto law, in violation of Art. 2 17 of the Arkansas Constitution." Davis v. Mabry,Director, 266 Ark. 487, 585 S.W.2d 949 (1979); see also Poe v.Housewright, Comm'ner, 271 Ark. 771, 610 S.W.2d 577 (1981). . . . The U.S. Supreme Court addressed this same issue in Weaver v. Graham, 450 U.S. 24 (1981). At issue there was a Florida statute which repealed an earlier statute and reduced the amount of "gain time" for good conduct that was deducted from a convicted prisoner's sentence. The Supreme Court found that the application of the new statute to the petitioner in that case was unconstitutional. The Court held:
 The ex post facto prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." (citations omitted) Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. (Cites omitted) . . .
 In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. . . . The presence or absence of an affirmative enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.
 . . . [I]t is the effect, not the form, of the law that determines whether it is ex post facto. The critical question is whether the law changes the legal consequences of acts completed before its effective date. . . . We have previously recognized that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed. . . .[2] Second, we have held that a statute may be retrospective even it if alters punitive conditions outside the sentence.
As this passage reflects, to the extent A.C.A. § 16-93-604 (Repl. 2006) imposes more punitive parole conditions than did the law in effect on April 5, 1977-the date on which the inmate at issue reportedly committed first degree murder-the current statute cannot be applied without violating the ex post facto laws.[3]
As noted in footnote 1, supra, A.C.A. § 16-93-604 was enacted pursuant to Act 93 of 1977, initially codified as Ark. Stat. Ann. § 43-2829 (Repl. 1977), which was in effect at the time the inmate committed the crime.[4] The provisions of this statute should apply, then, unless they have been amended since the date of the crime in a way that would disadvantage the inmate. As discussed further in my response to your second question, Act 93 was in fact amended by Act 620 of 1981 in a way that precludes applying one provision of the current legislation. However, with respect to the present question, in all other respects, I believe A.C.A. § 16-93-604 is the applicable legislation.
Finally, as also discussed in my response to your second question, I believe the previous burglary conviction has possible implications only with respect to when the inmate becomes eligible for parole under the provisions of A.C.A. § 16-93-604. The burglary conviction has no significance regarding which statute will apply in determining the date of eligibility.
Question 2: Is this individual a first termer for parole eligibilitywho must serve at least one third of his sentence with credit forgood-time allowances, as described in A.C.A. 16-93-604(b)(2); or is he asecond termer for parole eligibility who must serve one half of hissentence with credit for good-time allowances as described in A.C.A.16-93-604(b)(3)?
The answer to the question of whether the inmate is a "first termer" or a "second termer" will depend on whether the inmate was incarcerated on the burglary conviction. If he was, he would be considered a "second termer" for purposes of determining the date of parole eligibility; if he was not, he would be considered a "first termer." However, even if the inmate qualifies as a "first termer," he will nevertheless be obliged to serve one half of his sentence, subject to good-time credit, if the court determined he used a deadly weapon in the commission of his crime.
Section 16-93-604 provides in pertinent part:
 * * * (b) A person who committed felonies on and after April 1, 1977 and prior to April 1, 1983, and who has been convicted and incarcerated therefor, is eligible for release on parole as follows:
 * * * (2) An inmate classified as a first offender under § 16-93-603, except one under the age of twenty-one (21) as described in subsection (c) of this section and except one who pleads guilty or has been convicted of a Class Y felony, upon entering a correctional institution in this state under sentence from a circuit court is not eligible for release on parole until a minimum of one-third (1/3) of his or her sentence has been served, with credit for good-time allowances, or one-third (1/3) of the time to which the sentence is commuted by executive clemency is served, with credit for good-time allowances. However, if the trier of fact determines that a deadly weapon was used in the commission of the crime, a first offender twenty-one (21) years of age or older shall not be eligible for release on parole until a minimum of one-half (½) of the sentence is served, with credit for good-time allowances;
 (3) An inmate classified as a second offender under § 16-93-603 and one who pleads guilty or is convicted of a Class Y felony, upon entering a correctional institution in this state under sentence from a circuit court, is not eligible for release on parole until a minimum of one-half (½) of his or her sentence is served, with credit for good-time allowances, or one-half (½) of the time to which sentence is commuted by executive clemency, with credit for good-time allowances;
 * * * (c) Any person under the age of twenty-one (21) who is first convicted of a felony and committed to the first offender penal institution or to the Department of Correction for a term of years is eligible for parole at any time, unless a minimum time to be served is imposed consisting of not more than one-third (1/3) of the total time sentenced. In the event the individual is sentenced to a minimum time to be served, he or she is eligible for release on parole after serving the minimum time prescribed, with credit for good-time allowances, and for commutation by the exercise of executive clemency. . . .
The terms "first offender" and "second offender" as used in subsections (b)(2) and (b)(3) of this statute are defined as follows at A.C.A. § 16-93-603:
 For the purposes of §§ 16-93-602 — 16-93-604, inmates are to be classified as follows:
 (1) A first offender is an inmate convicted of one (1) or more felonies but who has not been incarcerated in some correctional institution in the United States, whether local, state, or federal, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this state for the offense or offenses for which he or she is being classified;
 (2) A second offender is an inmate convicted of two (2) or more felonies who has been incarcerated one (1) time in some correctional institution in the United States, whether local, state, or federal, for a crime which was a felony under the laws of the jurisdiction in which the offender was incarcerated, prior to being sentenced to a correctional institution in this state for the offense or offenses for which he or she is being classified[.][5]
I am struck by the fact that these definitions do not focus on the fact of a previous conviction, but rather on the fact of a previous incarceration, as determinative of whether one is a first or second offender. In the present case, then, determining whether the inmate should be classified as a first or a second offender will turn on whether he was incarcerated for the burglary conviction. If he was, his parole eligibility should be determined under A.C.A. § 16-93-603(2); if he was not, it should be determined under A.C.A. § 16-93-603(1). Having offered this opinion, I should note that the result will be the same in either instance if the inmate used a deadly weapon in the commission of his crime: under A.C.A. § 16-93-604(b)(2), even a first offender who used a deadly weapon in committing a crime will be obliged to serve at least one half of his sentence, subject to good-time allowances, prior to being eligible for parole.
Finally, I should note that I consider it irrelevant that A.C.A. § 16-93-604(b)(2) declares that an inmate who has pleaded guilty or has been convicted of a Class Y felony will be obliged to serve at least one half of his sentence, subject to good-time allowances, prior to becoming eligible for parole. First, although murder in the first degree is currently classified as a Class Y felony, A.C.A. § 5-1-102(c) (Repl. 2006), it was classified as a Class A felony on the date the inmate committed his crime, Ark. Stat. Ann. § 41-1502(3) (Repl. 1977), rendering the current provision inapplicable. Moreover, again on the date of the offense, the applicable statute contained no provision that a first offender who had committed a Class A offense would be required to serve at least one half of his sentence, subject to good-time allowances, before being eligible for parole. Ark. Stat. Ann. § 43-2829(B)(2) (Repl. 1977). As noted in my response to your first question, the provision regarding the effect of a Class Y felony was added to the statute pursuant to Act 620 of 1981. Accordingly, assuming the inmate in question qualifies as a first offender, I believe he will be obliged to serve one half, as opposed to one third, of his sentence before being eligible for parole only if he used a deadly weapon in committing his offense.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB/JHD:cyh
[1] The referenced legislation is Acts 1977, No. 93, which enacted the legislation at issue in your request.
[2] Although the language from Davis quoted in this excerpt would suggest that a criminal might rely on the parole conditions of the law in effect on the date of sentencing, as opposed to the date on which the crime was committed, the later pronouncement in Bosnick establishes beyond all doubt that the operative date is that on which the crime occurred.
[3] I should note that no converse principle dictates applying the law in effect at the time the crime was committed if applying subsequent law would inure to the inmate's benefit. As reflected in the passage quoted above, the ex post facto proscription precludes applying subsequent law with respect to parole eligibility only if doing so would work to the inmate's disadvantage. See Ark. Op. Att'y Gen. No. 2006-120 (discussing this principle in the context of changes in the law enhancing awards of meritorious good time).
[4] The effective date of Act 93 was February 1, 1977.
[5] This statute has not been amended since its enactment pursuant toAct 93 of 1977.