# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01914-SCT

*GLEN CONLEY*

*v.*

*CHRISTOPHER EPPS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2012 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GLEN CONLEY (PRO SE) |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: R. STEWART SMITH, JR. |
| | JAMES M. NORRIS |
| | ANTHONY LOUIS SCHMIDT, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    The Circuit Court of Sunflower County sentenced Glen Conley to life without parole.

Conley seeks judicial review of the parole board's refusal to give him a parole eligibility

date.  We hold that the parole board lacked the authority to review his sentence of life

without parole.  Thus, although under different reasoning, we affirm the dismissal of his

claim by the Sunflower County Circuit Court and the Court of Appeals.

### FACTS AND PROCEDURAL HISTORY

¶2. The circuit court convicted Conley of capital murder on July 3, 1998. The jury failed to return a unanimous sentence; therefore, the trial judge sentenced him to life without parole. Conley appealed. He argued that the only available sentences at the time of his crime were life and death and that his sentence of life without parole violated the *Ex Post Facto* Clause of the United States Constitution. *Conley v. State*, 790 So. 2d 773, 803-04 (¶¶ 115-23) (Miss. 2001). The Court found Conley's *ex post facto* claims to be without merit. *Id.* at 804 (¶123).

¶3. The case *sub judice* arises from Conley's unsuccessful attempt to seek a parole eligibility date. After exhausting all administrative remedies through the Department of Corrections for his denial of a parole eligibility date, Conley sought judicial review in the Circuit Court of Sunflower County. The court dismissed his complaint because he presented insufficient evidence as to whether he was entitled to parole eligibility. Conley appealed, and we assigned his case to the Court of Appeals. The Court of Appeals held the doctrine of *res judicata* barred Conley's petition, and his claim was without merit. *Conley v. Epps*, No. 2012-CP-01914-COA, 2013 WL 6233895, **1-4 (Miss. Ct. App. Dec. 3, 2013). Conley then petitioned for *writ of certiorari*, and we granted it. Under different reasoning than that of the Court of Appeals, we affirm.

## STANDARD OF REVIEW

¶4. Whether the parole board had the authority to review Conley's sentence of life without parole is a question of law. When a question of law is raised, the standard of review is *de novo*. *See Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999).

## DISCUSSION

2

**Whether the parole board had the authority to review Conley's sentence of life without parole.**

¶5.     By applying the doctrine of *res judicata*, the Court of Appeals treated Conley's complaint as a petition for post-conviction relief. **Conley**, 2013 WL 6233895, at \*\*1-4. Treating Conley's complaint as a petition for post-conviction relief was inappropriate because Conley sought judicial review – an appeal – of the parole board's denial of his application for a parole eligibility date. However, we note that Conley's instant claim mirrors his direct appeal in 2001. *See* **Conley**, 790 So. 2d at 803-04 (¶¶ 115-23). He restates his original *ex post facto* claim by articulating in his complaint that the Department of Corrections' decision to enforce an illegally imposed sentence is a denial of due process. Thus, once again, Conley attacks the legality of his sentence, and the Court will not reconsider the legality of his sentence.

¶6.     Aside from his *ex post facto* claims, Conley argues that, when the language in a trial court's sentencing order revokes parole eligibility without the lawful authority to do so, the parole board may disregard that portion of a sentencing order as mere surplusage. *See* **Brown**, 731 So. 2d at 598-99; **Kincaid v. State**, 711 So. 2d 873, 876 (Miss. 1998); **Temple v. State**, 671 So. 2d 58, 59 (Miss. 1996); **Cain v. State**, 337 So. 2d 935, 936 (Miss. 1976). However, Conley misinterprets the Court's holdings in the above referenced cases.

¶7.     Conley correctly contends that, when a trial judge's parole limitation is illegal, the parole board may strike the parole limitation language as mere surplusage and affirm the remainder. However, a court – such as the Mississippi Supreme Court – must first determine that the parole limitation is illegal. *See* **Brown**, 731 So. 2d at 599 (holding that the trial court

3

had no authority to revoke Brown's parole eligibility, thus the "completely served" language in Brown's sentence is surplusage) (citing *Cain*, 337 So. 2d at 936; *Kincaid*, 711 So. 2d at 76; *Gardner v. State*, 514 So. 2d 292, 294 (Miss. 1987)). In other words, the Court does not empower the parole board to determine whether the trial judge had the lawful authority to revoke parole eligibility, but, when a court determines the trial judge's parole limitation is illegal, the parole board may *then* strike the parole limitation language as mere surplusage. In Conley's 2001 appeal, the Court did not find the language of the trial judge's sentence to be illegal; therefore, the instant case is without merit. *See Conley*, So. 2d at 803-04 (¶¶ 115-23).

## CONCLUSION

¶8.     The Court of Appeals erred by addressing Conley's claim as an *ex post facto* claim. However, the Court of Appeals reached the right result in affirming the dismissal of Conley's claim because the parole board did not have the authority to grant the relief Conley requested. Thus, we affirm both the dismissal of Conley's appeal and the judgment of the Court of Appeals.

¶9.     **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.**

**DICKINSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶10. I fully join the majority because, in this case's current procedural posture, this Court cannot reach the merits of Conley's *ex post facto* claim. But I write separately to express my view that this Court erred in its *ex post facto* jurisprudence in Conley's direct appeal.

¶11. The United States Constitution "provides that '[n]o State shall . . . pass any . . . ex post facto Law.'"[1] In **Lynce v. Mathis**, the Supreme Court of the United States explained that "[t]he bulk of our ex post facto jurisprudence has involved claims that a law has inflicted 'a greater punishment, than the law annexed to the crime, when committed.'"[2] The High Court also explained that "such laws implicate the central concerns of the Ex Post Facto Clause: 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'"[3]

¶12. Two elements must exist for a law to "fall within the ex post facto prohibition . . . ."[4] First, the "law must be retrospective–that is, 'it must apply to events occurring before its enactment . . . .'"[5] Second, "it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime."[6]

---

[1] **Lynce v. Mathis**, 519 U.S. 433, 440, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997) (quoting U.S. Const. art. I, § 10).

[2] **Lynce**, 519 U.S. at 441 (quoting **Calder v. Bull**, 3 Dall. 386, 390, 1 L. Ed. 648 (1798)).

[3] **Lynce**, 519 U.S. at 441 (quoting **Weaver v. Graham**, 450 U.S. 24, 30, 101 S. Ct. 960, 965, 67 L. Ed. 2d 17 (1981)).

[4] **Lynce**, 519 U.S. at 441.

[5] **Id.** (quoting **Weaver**, 450 U.S. at 29).

[6] **Lynce**, 519 U.S. at 441 (quoting **Weaver**, 450 U.S. at 29; citing **Collins v. Youngblood**, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990)).

¶13.   Before April 1994, Mississippi law authorized only one sentence for capital murder, where the jury failed to agree on a sentence: The trial judge was required to impose a life sentence,[7] and the defendant became eligible for parole after serving ten years.[8]

¶14.   On April 7, 1994, the Mississippi Legislature passed an amendment to the capital-murder, capital-sentencing, and parole statutes that added a new sentence of life without parole.[9]  The capital-sentencing statute was amended to reflect that change but still required the trial judge to impose a life sentence if the jury failed to agree.[10]  Finally, the Legislature extended the ten-year parole requirement to twenty years.[11]  This act took effect July 1, 1994, and specifically stated that its provisions "shall apply to any case in which pretrial, trial or resentencing proceedings take place after July 1, 1994."[12]  But the parole-statute amendment stated that it applied to any person "who, on or after July 1, 1994, is charged, tried, convicted and sentenced . . . ."[13]

¶15.   Then, on August 23, 1994, during a special session, the Legislature amended the parole statute once more, to remove parole eligibility for anyone sentenced to life for capital

---

[7] Miss. Code Ann. § 99-19-101 (Rev. 1993).

[8] Miss. Code Ann. § 47-7-3 (Rev. 1993).

[9] 1994 Miss. Laws Ch. 566.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

6

murder.[14]  The amendment took effect from and after its passage and removed the "on or after July 1, 1994" language from the parole statute.[15]

¶16.   Conley's crime occurred on May 22, 1994—more than a month prior to the change in the law.  The trial judge sentenced him to life without parole pursuant to the amended law that took effect after Conley's crime,[16] so clearly, the law was applied retrospectively to Conley.  The only remaining question is whether that amendment disadvantaged Conley "by altering the definition of criminal conduct or increasing the punishment for the crime."[17]

¶17.   In deciding Conley's direct appeal,[18] this Court found that adding the life-without-parole sentence to capital murder was "ameliorative"—that is, it did not disadvantage Conley—because it did not increase the maximum punishment.[19]  But in reaching that conclusion, this Court failed to consider or address that the August parole-statute amendment not only removed parole eligibility for a crime where it previously had existed, but it also effectively increased the mandatory minimum sentence.

---

[14] 1994 Miss. Laws 1st Ex. Sess. Ch. 25.

[15] *Id.*

[16] At the time of Conley's trial, the capital-murder sentencing statute still required the trial judge to impose a life sentence, not life without parole.  It appears that the trial judge sentenced Conley to life without parole because the August 1994 amendment to the parole statute effectively turned the available life sentence for capital murder into life without parole.

[17] *Lynce*, 519 U.S. at 441 (citing *Collins*, 497 U.S. 37 at 50).

[18] *Conley v. State*, 790 So. 2d 773, 803-04 (Miss. 2001).

[19] *Id.*

7

¶18.    In *Lynce*, the Supreme Court of the United States addressed a similar *ex post facto* claim when the Florida legislature amended its parole statute to preclude parole for murder-related offenses.[20] The Court explained that changes to parole statutes may implicate the *Ex Post Facto* Clause because:

> As we recognized in *Weaver*, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are "one determinant of petitioner's prison term . . . and . . . [the petitioner's] effective sentence is altered once this determinant is changed."[21]

¶19.    The Court conducted an objective analysis of whether "the new statute 'lengthened the period that someone in petitioner's position must spend in prison.'"[22] Applying that test, the Court found that the statutory amendment, which removed the petitioner's previously earned parole credits, violated the *Ex Post Facto* Clause.[23] This decision rested heavily on the Court's prior decision in *Weaver*, in which the Court found that a statutory amendment violated the *Ex Post Facto* clause by depriving the petitioner of his opportunity to earn parole credits in the future.[24]

¶20.    The Supreme Court's decisions in *Lynce* and *Weaver* turned on the fact that the petitioners in those cases were entitled to an opportunity for parole when their conduct

---

[20] *Lynce*, 519 U.S. at 436.

[21] *Id.* at 445 (quoting *Weaver*, 450 U.S. at 32).

[22] *Lynce*, 519 U.S. at 442 (quoting *Weaver*, 450 U.S. at 32).

[23] *Lynce*, 519 U.S. at 439-47.

[24] *Lynce*, 519 U.S. at 442 (citing *Weaver*, 450 U.S. at 36).

8

occurred, but lost that opportunity altogether through the statutory amendments.[25] The Court showed that this fact was key to its decision by distinguishing *California Department of Corrections v. Morales*, in which the Court found that an amendment to California's parole statute did not violate the *Ex Post Facto* Clause.[26] There, California amended its parole provision to permit the parole board to defer subsequent parole hearings, after an initial parole hearing, for offenders who had committed multiple murders.[27] The *Lynce* court explained that *Morales* did not control because:

> Unlike the California amendment at issue in *Morales*, the 1992 Florida statute did more than simply remove a mechanism that created an opportunity for early release for a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of prisoners who were previously eligible -- including some, like petitioner, who had actually been released.[28]

¶21. Here, the effect of the August 1994 amendment to the parole statute was precisely the same. It took a class of prisoners, those sentenced to life for capital murder, and removed their existing eligibility for parole. Because this change occurred after Conley's conduct, the amendment applied retroactively and his life-without-parole sentence disadvantaged him by increasing the amount of time he *must* spend in prison. This Court erred by holding to the contrary when it decided his direct appeal. We should reverse our incorrect *ex post facto* holding in *Conley* at our first opportunity.

---

[25] *Lynce*, 519 U.S. at 442 (citing *Weaver*, 450 U.S. at 36).

[26] *Lynce*, 519 U.S. at 443-47 (citing *California Dep't of Corrections v. Morales*, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)).

[27] *Lynce*, 519 U.S. at 443 (citing *Morales*, 514 U.S. at 507).

[28] *Lynce*, 519 U.S. at 447.

**KITCHENS AND KING, JJ., JOIN THIS OPINION**.