DICKINSON, Presiding Justice,
specially concurring:
¶ 10. I fully join the majority because, in this case’s current procedural posture, this Court cannot reach the merits of Conley’s ex post facto claim. But I write separately to express my view that this Court erred in its ex post facto jurisprudence in Conley’s direct appeal.
¶ 11. The United States Constitution “provides that ‘[n]o State shall ... pass any ... ex post facto Law.’ ”[1] In Lynce v. Mathis, the Supreme Court of the United States explained that “[t]he bulk of our ex post facto jurisprudence has involved claims that a law has inflicted ‘a greater punishment, than the law annexed to the crime, when committed.’ ”[2] The High Court also explained that “such laws implicate the central concerns of the Ex Post Facto Clause: ‘the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.’ ”[3]
¶ 12. Two elements must exist for a law to “fall within the ex post facto prohibition ....”[4] First, the “law must be retrospective-that is, ‘it must apply to events occurring before its enactment....’”[5] Second, “it ‘must disadvantage the offender affected by it’ by altering the definition of criminal conduct or increasing the punishment for the crime.”[6]
¶ 18. Before April 1994, Mississippi law authorized only one sentence for capital murder, where the jury failed to agree on a sentence: The trial judge was required to impose a life sentence,[7] and the defendant became eligible for parole after serving ten years.[8]
¶ 14. On April 7, 1994, the Mississippi Legislature passed an amendment to the capital-murder, capital-sentencing, and parole statutes that added a new sentence of life without parole.[9] The capital-sentencing statute was amended to reflect that change but still required the trial judge to impose a life sentence if the jury failed to *706 agree.[10] Finally, the Legislature extended the ten-year parole requirement to twenty years.[11] This act took effect July 1, 1994, and specifically stated that its provisions “shall apply to any case in which pretrial, trial or resentencing proceedings take place after July 1, 1994.” [12] But the parole-statute amendment stated that it applied to any person “who, on or after July I, 1994, is charged, tried, convicted and sentenced....”[13]
¶ 15. Then, on August 28, 1994, during a special session, the Legislature amended the parole statute once more, to remove parole eligibility for anyone sentenced to life for capital murder.[14] The amendment took effect from and after its passage and removed the “on or after July 1, 1994” language from the parole statute.[15]
¶ 16. Conley’s crime occurred on May 22, 1994 — more than a month prior to the change in the law. The trial judge sentenced him to life without parole pursuant to the amended law that took effect after Conley’s crime,[16] so. clearly, the law was applied retrospectively to Conley. The only remaining question is whether that amendment disadvantaged Conley “by altering the definition of criminal conduct or increasing the punishment for the crime.”[17]
¶ 17. In deciding Conley’s direct appeal,[18] this Court found' that adding the life-without-parole sentence to capital murder was “ameliorative” — that is, it did not disadvantage Conley — because it did not increase the maximum punishment.[19] But in reaching that conclusion, this Court failed to consider or address that the August parole-statute amendment not only removed parole eligibility for a crime where it previously had existed, but it also effectively increased the mandatory minimum sentence.
¶ 18. In Lynce, the Supreme Court of the United States addressed a similar ex post facto claim when the Florida legislature amended its parole statute to preclude parole for murder-related offenses.[20] The Court explained that changes to parole statutes may implicate the Ex Post Facto Clause because:
As we recognized in Weaver, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are “one determinant of petitioner’s prison term ... and ... [the petitioner’s] effective sentence is altered once this determinant is changed.”[21]
*707 ¶ 19. The Court conducted an objective analysis of whether “the new statute ‘lengthened the period that someone in petitioner’s position must spend in prison.’ ”[22] Applying that test, the Court found that the statutory amendment, which removed the petitioner’s previously earned parole credits, violated the Ex Post Facto Clause.[23] This decision rested heavily on the Court’s prior decision in Weaver, in which the Court found that a statutory amendment violated the Ex Post Facto clause by depriving the petitioner of his opportunity to earn parole credits in the future.[24]
¶ 20. The Supreme Court’s decisions in Lynce and Weaver turned on the fact that the petitioners in those cases were entitled to an opportunity for parole when their conduct occurred, but lost that opportunity altogether through the statutory amendments.[25] The Court showed that this fact was key to its decision by distinguishing California Department of Corrections v. Morales, in which the Court found that an amendment to California’s parole statute did not violate the Ex Post Facto Clause.[26] There, California amended its parole provision to permit the parole board to defer subsequent parole hearings, after an initial parole hearing, for offenders who had committed multiple murders.[27] The Lynce court explained that Morales did not control because:
Unlike the California amendment at issue in Morales, the 1992 Florida statute did more than simply remove a mechanism that created an opportunity. for early release for a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of prisoners who were previously eligible — including some, like petitioner, who had actually been released.[28]
¶ 21. Here, the effect of the August 1994 amendment to the parole statute was precisely the same. It took a class of prisoners, those sentenced to life for capital murder, and removed their existing eligibility for parole. Because this change occurred after Conley’s conduct, the amendment applied retroactively and his life-without-parole sentence disadvantaged him by increasing the amount of time he must spend in prison. This Court erred by holding to the contrary when it decided his direct appeal. We should reverse our incorrect ex post facto holding in Conley at our first opportunity.
KITCHENS AND KING, JJ„ JOIN THIS OPINION.

. Lynce v. Mathis, 519 U.S. 433, 440, 117 S.Ct. 891, 895, 137 L.Ed.2d 63 (1997) (quoting U.S. Const, art. I, § 10).

. Lynce, 519 U.S. at 441, 117 S.Ct. 891 (quoting Colder v. Bull, 3 Dali. 386, 390, 1 L.Ed. 648 (1798)).

. Lynce, 519 U.S. at 441, 117 S.Ct. 891 (quoting Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)).

. Lynce, 519 U.S. at 441, 117 S.Ct. 891.

. Id. (quoting Weaver, 450 U.S. at 29, 101 S.Ct. 960).

. Lynce, 519 U.S. at 441, 117 S.Ct. 891 (quoting Weaver, 450 U.S. at 29, 101 S.Ct. 960; citing Collins v. Youngblood, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)).

. Miss.Code Ann. § 99-19-101 (Rev. 1993).

. Miss.Code Ann. § 47-7-3 (Rev. 1993).

. 1994 Miss. Laws Ch. 566.

.Id.

. Id.

. Id.

. Id.

. 1994 Miss. Laws 1st Ex.Sess. Ch. 25.

. Id.

. At the time of Conley’s trial, the capital-murder sentencing statute still required the trial judge to impose a life sentence, not life without parole. It appears that the trial judge sentenced Conley to life without parole because the August 1994 amendment to the parole statute effectively turned the available life sentence for capital murder into life without parole.

. Lynce, 519 U.S. at 441, 117 S.Ct. 891 (citing Collins, 497 U.S. at 50, 110 S.Ct. 2715).

. Conley v. State, 790 So.2d 773, 803-04 (Miss.2001).

. Id.

. Lynce, 519 U.S. at 436, 117 S.Ct. 891.

. Id. at 445, 117 S.Ct. 891 (quoting Weaver, 450 U.S. at 32, 101 S.Ct. 960).

. Lynce, 519 U.S. at 442, 117 S.Ct. 891 (quoting Weaver, 450 U.S. at 32, 101 S.Ct. 960).

. Lynce, 519 U.S. at 439-47, 117 S.Ct. 891.

. Lynce, 519 U.S. at 442, 117 S.Ct. 891 (citing Weaver, 450 U.S. at 36, 101 S.Ct. 960).

. Lynce, 519 U.S. at 442, 117 S.Ct. 891 (citing Weaver, 450 U.S. at 36, 101 S.Ct. 960).

. Lynce, 519 U.S. at 443-47, 117 S.Ct. 891 (citing California Dep’t of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).

. Lynce, 519 U.S. at 443, 117 S.Ct. 891 (citing Morales, 514 U.S. at 507, 115 S.Ct. 1597).

. Lynce, 519 U.S. at 447, 117 S.Ct. 891.